**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| 7-ELEVEN, INC., | |
| Plaintiff, | Civil Action No.  3:26-cv-2201 |
| v. | **JURY TRIAL DEMANDED** |
| NIKE, INC., | |
| Defendant. | |

## PLAINTIFF'S COMPLAINT

Plaintiff 7-Eleven, Inc. ("7-Eleven" or "Plaintiff") files this Complaint against Defendant Nike, Inc. ("Nike" or "Defendant"), alleging as follows based on 7-Eleven's knowledge, information, and belief:

## INTRODUCTION

1.      7-Eleven is the world's largest convenience store chain. For almost sixty years, 7-Eleven has advertised, marketed, promoted, distributed, and sold convenience store products, services, apparel, and other related goods and services under its famous and distinctive 7-ELEVEN design mark (shown below), which incorporates the distinctive and nonfunctional combination of the colors orange, green, and red.



2.      Since at least as early as 1987, 7-Eleven further has used in commerce a distinctive and nonfunctional pattern of orange, green, and red stripes (the "Tri-Color Mark"), examples of

1

which are shown below. 7-Eleven's use of orange, green, and red stripes is iconic, famous, and immediately recognized by consumers in the United States and around the world; and consumers exclusively associate the use of orange, green, and red stripes with 7-Eleven. In addition to 7-Eleven's longstanding common law rights in the Tri-Color Mark, 7-Eleven owns several incontestable federal trademark registrations incorporating the distinctive and nonfunctional combination of orange, green, and red stripes constituting the Tri-Color Mark.[1]

Registration No. 3,679,337          Registration No. 4,917,149



Registration No. 3,644,842

3.        In addition to using its Tri-Color Mark in connection with its retail convenience store services, 7-Eleven uses its distinctive and nonfunctional color combination extensively on apparel, footwear, headwear, and other accessories, examples of which are shown below:



---

[1] Additional details regarding 7-Eleven's federal trademark registrations for marks incorporating the Tri-Color Mark or which otherwise incorporate 7-Eleven's signature colors of orange, green, and red are provided below in Paragraphs 19–22.



4. Because of years of continuous and exclusive use of the inherently distinctive, arbitrary, and nonfunctional combination of orange, green, and red stripes, 7-Eleven has acquired strong and protectable common law rights in the Tri-Color Mark. 7-Eleven further has acquired significant goodwill, and consumers readily recognize the pattern of orange, green, and red stripes as signifying 7-Eleven as the exclusive source of goods bearing the Tri-Color Mark.

5. Notwithstanding 7-Eleven's registered and common law rights in its Tri-Color Mark, Defendant has designed and plans imminently to release a shoe, shown below, bearing a confusingly similar imitation of 7-Eleven's Tri-Color Mark—without authorization from 7-Eleven (the "Infringing Footwear"):



6.      According to Nike's e-commerce mobile app "SNKRS," Nike has scheduled the release of the Infringing Footwear for July 11, or 7/11, which is also well known as "7-Eleven Day" or "Free Slurpee Day" in honor of 7-Eleven:



A copy of a screen capture from SNKRS reflecting the 7/11 launch date appears in **Exhibit 1**.

7.      Nike's infringement is a deliberate and willful effort to associate its footwear with 7-Eleven by copying or imitating the Tri-Color Mark. Nike's misleading practices and misappropriation of 7-Eleven's Tri-Color Mark likely will cause—and indeed already have caused—confusion among the public and likely will deceive consumers as to the Infringing Footwear's source, sponsorship, endorsement, or affiliation.

8.      Because Nike's actions irreparably harm 7-Eleven's brand and its extremely valuable and famous Tri-Color Mark, 7-Eleven brings this action for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); trademark infringement and unfair competition under the common law of

Texas; trademark infringement under Tex. Bus. & Com. Code § 16.102(b); unfair competition by misappropriation under the common law of Texas; and trademark dilution under Tex. Bus. & Com. Code § 16.103. Among other relief, 7-Eleven asks this Court to: (a) permanently enjoin Nike from distributing, marketing, or selling footwear using or bearing confusingly similar imitations of the Tri-Color Mark or 7-Eleven's federal registrations incorporating the Tri-Color Mark; (b) award 7-Eleven monetary damages and to treble that award; (c) require Nike to disgorge all of its profits from its sales, including presales, of the Infringing Footwear, and to enhance such profits; and (d) award 7-Eleven exemplary damages, attorneys' fees, and costs.

## PARTIES

9.    Plaintiff 7-Eleven is a Texas corporation having its principal place of business at 3200 Hackberry Road, Irving, Texas 75063.

10.    Defendant Nike is an Oregon corporation with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Title 28 of the United States Code, §§ 1331 and 1338. Subject matter jurisdiction over 7-Eleven's related state and common-law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

12.    This Court has personal jurisdiction over Nike because, on information and belief, Nike regularly conducts business in the State of Texas and has knowingly and purposefully marketed, distributed, offered for sale, and sold the Infringing Footwear to persons within the State of Texas.

5

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the acts complained of herein are occurring in this District.

<strong><u>FACTS</u></strong>

**I.    7-Eleven's Trademarks**

14.    Since long before the acts of Nike complained of herein, 7-Eleven has, among other things, offered convenience store products, services, apparel, and other related goods and services, either directly or through its licensees (collectively, "7-Eleven"), to the general public at various locations throughout the United States.

15.    Since at least as early as 1946, 7-Eleven has exclusively and continuously used the famous mark 7-ELEVEN, and marks incorporating the term 7-ELEVEN, in commerce in connection with various products and services, including the sale and promotion of retail convenience store services, apparel, accessories, and other related merchandise.

16.    For nearly sixty years, 7-Eleven has displayed its famous 7-ELEVEN mark and marks incorporating the term 7-ELEVEN in a combination of orange, green, and red. Examples of these design marks appear below.

Registration Nos. 4,345,014 and 2,834,419[2]                Registration No. 5,105,141

    

---

[2] Registration No. 2,834,419 describes the mark as consisting of a 7-ELEVEN design mark in which the top of the "7" is orange, the bottom of the "7" is red, the word "ELEVEN" is green, the "7-ELEVEN" design is on a white trapezoid background, and the white background is on a green square. The registration further provides a date of first use in commerce of January 31, 1968.

Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and these registrations are incontestable. Copies of the Certificates of Registration for these design marks are attached collectively as **Exhibit 2**.

17.    For nearly 40 years, 7-Eleven specifically has exclusively and continuously used in commerce a combination of orange, green, and red stripes in connection with its goods and services, including the sale and promotion of retail convenience store services, footwear, apparel, and other merchandise. Representative examples of footwear, apparel, headwear, and accessories bearing 7-Eleven's Tri-Color Mark are shown below and attached as **Exhibit 3**.



18.     There are currently more than 83,000 convenience stores globally, with more than 8,000 convenience stores in the United States, operating under the 7-ELEVEN name and marks, virtually all of which use the 7-Eleven Tri-Color Mark in signage, advertising, and marketing.

19.     7-Eleven owns a number of federal trademark registrations on the Principal Register for marks incorporating the Tri-Color Mark and 7-Eleven's signature colors of orange, green, and red—including the following (collectively, the "7-ELEVEN Marks"):

| MARK | REG. NO. | REG. DATE | GOODS OR SERVICES |
|---|---|---|---|
| | 3,644,842 | 06/23/2009 | Retail convenience store services featuring the sale of food and beverage products for consumption on or off the premises |
| | 3,679,337[3] | 09/08/2009 | Retail convenience store services featuring food and beverage products for consumption on or off the premises |
| | 4,917,149 | 03/15/2016 | Retail convenience store services featuring food and beverage products for consumption on or off the premises |
| | 2,135,385[4] | 02/10/1998 | Retail convenience store services |
| | 2,295,753[5] | 11/30/1999 | Retail gasoline station services |

---

[3] The Registration Certificate for Registration No. 3,679,337 states that the mark's date of first use was January 31, 1987.

[4] The Registration Certificate for Registration No. 2,135,385 states that "the drawing is lined for the colors orange, green, and red, and color is a feature of the mark." It further states "the mark consists of a pattern of stripes in the colors orange, green, and red displayed on stores and used in advertising." Finally, this Registration provides that 7-Eleven first used this mark in commerce in the United States in 1992.

[5] The Registration Certificate for Registration No. 2,295,753 states that "the mark consists of a pattern of stripes in the colors orange, green, and red" and that 7-Eleven first used it in commerce in the United States in 1991.

Copies of the Certificates of Registration for the 7-ELEVEN Marks are attached collectively as **Exhibit 4**.

20.     The registrations for the 7-ELEVEN Marks are valid, subsisting, and incontestable. These registrations therefore are conclusive evidence of the validity of those registered marks and of their registration, of 7-Eleven's ownership of those marks, and of 7-Eleven's exclusive right to use those marks in commerce under 15 U.S.C. § 1115(b).

21.     7-Eleven owns additional trademark registrations for marks incorporating its signature colors, some of which are incontestable, including U.S. Registration Nos. 4,773,150, 6,724,873, and 7,959,870. Copies of the Certificates of Registration for these additional marks are attached collectively as **Exhibit 5**.

22.     7-Eleven also owns U.S. Registration No. 2,751,552 for its 7-ELEVEN design mark—which 7-Eleven consistently uses with its signature orange, green, and red colors—for clothing, including caps and t-shirts, in Class 25; for sporting goods, namely, golf balls in Class 28; and for towels in Class 24.

23.     Annually, 7-Eleven has sold billions of dollars of products and services in the United States in its 7-ELEVEN stores under its Tri-Color Mark and 7-ELEVEN Marks. 7-Eleven spends millions of dollars each year advertising and promoting those products and services in the United States in connection with the Tri-Color Mark and 7-ELEVEN Marks.

24.     In promoting its brand, 7-Eleven has collaborated with prominent footwear and sporting goods brands, including Crocs, Sunday Golf, Breezy Golf, and the skate-boarding brand DGK, and representative examples of the resulting products are shown below:



Additional examples of 7-Eleven's collaboration with Crocs are attached as **Exhibit 6**; additional examples of 7-Eleven's collaboration with Sunday Golf are attached as **Exhibit 7**; additional examples of 7-Eleven's collaboration with Breezy Golf are attached as **Exhibit 8**; and additional examples of 7-Eleven's collaboration with DKG are attached as **Exhibit 9**. Consumers expect that such products or "collabs" featuring 7-Eleven's Tri-Color Mark and 7-ELEVEN Marks are authorized or licensed by 7-Eleven, or otherwise emanate from 7-Eleven.

25.    Because of 7-Eleven's widespread, continuous, and exclusive use and promotion of its 7-ELEVEN Marks and its Tri-Color Mark, 7-Eleven has developed valuable goodwill, public recognition, and strong rights in its 7-ELEVEN Marks and Tri-Color Mark, which consumers have come to know and trust as symbols of quality and value.

26. Indeed, unsolicited media coverage of the Infringing Footwear has referred to 7-Eleven's Tri-Color Mark as "instantly recognizable" (Harris, Zach, "The Nike Air Max 95 Big Bubble 7-Eleven is Dropping Soon," *Sole Retriever*, June 29, 2026), "unmistakable" (Servantes, Ian, "Nike's Big Bubble Air Max 95 Is Becoming an Unexpected Homage to 7-Eleven," *Women's Wear Daily*, June 10, 2026), "signature" (Deng, Victor, "These Nike Air Max 95 Colorways Are Inspired by Convenience Stores," *Complex*, June 29, 2026), and "iconic" (Badewa, Collins, "Nike's Latest Air Max 95 Takes Design Cues From Japan's Iconic 7-Eleven Stores," *Style Rave*, June 11, 2026). Copies of these and other unsolicited media articles discussing the 7-Eleven brand and signature use of orange, green, and red are attached collectively as **Exhibit 10**.

27. The 7-ELEVEN Marks and Tri-Color Mark are nonfunctional and inherently distinctive, serving to identify and indicate the source of 7-Eleven's products and services to the consuming public, and to distinguish 7-Eleven's products and services from those of others.

28. Additionally and alternatively, because of 7-Eleven's widespread, continuous, and exclusive use and promotion of the 7-ELEVEN Marks and Tri-Color Mark, the marks have become distinctive to designate 7-Eleven's goods and services, to distinguish 7-Eleven's goods and services from the goods and services of others, and to distinguish the source or origin of 7-Eleven's goods and services.

29. As a result of widespread, continuous, and exclusive use and promotion by 7-Eleven, the 7-ELEVEN Marks and Tri-Color Mark are extremely well known, famous, and widely recognized by the general consuming public in the State of Texas and throughout the United States as a designation of the source of 7-Eleven's goods and services.

30. Because of the widespread, continuous, and exclusive use of the 7-ELEVEN Marks and Tri-Color Mark in connection with 7-Eleven's goods and services, as well as the federal

11

registrations covering the 7-ELEVEN Marks, the general consuming public of the United States recognizes the 7-ELEVEN Marks and Tri-Color Mark as a designation of the origin of goods and services of 7-Eleven, and they are, therefore, famous marks. The 7-ELEVEN Marks and Tri-Color Mark became famous long before Nike began selling the Infringing Footwear.

## II.   **Nike's Unlawful Activities**

31.     In or around the middle of June 2026, 7-Eleven became aware that Nike is manufacturing, producing, marketing, and intending to distribute, offer for sale, and sell in interstate commerce footwear bearing a confusingly similar imitation of 7-Eleven's famous Tri-Color Mark and of the signature colors of the 7-ELEVEN Marks, without authorization from 7-Eleven, as shown below:



32.     On information and belief, the Infringing Footwear is already available for presale—including to consumers in Texas and in this District—and will be released for sale on July 11, 2026. Attached as **Exhibit 1** is a screen capture of Nike's mobile SNKRS application, which shows that the Infringing Footwear will be available for purchase on July 11, 2026.

33.     On information and belief, the Infringing Footwear will be available for sale through Nike's own website and mobile application, in Nike's own retail stores, and through third-party retailers, globally and throughout the United States, including in the State of Texas and in this District. Nike's website, www.nike.com, is readily accessible to consumers in Texas and in

this District; Nike operates at least one Nike retail store in Dallas, Texas; and, on information and belief, the Infringing Footwear will be sold not only through Nike's website and retail store(s) to consumers in the State of Texas and this District, but it will also be sold through numerous third-party retailers—both online and through brick-and-mortar retailer stores—in Texas and in this District.

34.    Indeed, 7-Eleven knows of at least one instance in which a consumer has purchased a pair of the Infringing Footwear through a third-party website prior to the Infringing Footwear's official launch by Nike on July 11 (7/11).

35.    The Infringing Footwear is not manufactured by 7-Eleven, nor is it associated, affiliated, or connected with 7-Eleven, or licensed, authorized, sponsored, endorsed, or approved by 7-Eleven in any way.

36.    7-Eleven used its 7-ELEVEN Marks and Tri-Color Mark extensively and continuously long before Nike began distributing, marketing, promoting offering for sale, or selling the Infringing Footwear, and the 7-ELEVEN Marks and Tri-Color Mark became famous long before Nike began its infringement, unfair competition, and dilution of 7-Eleven's rights.

37.    Nike's use of a confusingly similar imitation of 7-Eleven's famous Tri-Color Mark and 7-ELEVEN Marks is thus likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into believing that the Infringing Footwear are manufactured, authorized, licensed, or endorsed by, or in some manner associated with, 7-Eleven, which it is not.

38.    Indeed, there is already consumer confusion as to an affiliation between the Infringing Footwear and 7-Eleven. Product listings of the Infringing Footwear call the product the "7-Eleven" shoe. Copies of those listings are attached collectively at **Exhibit 11**.

13

39.    Additionally, third-parties covering the release of the Infringing Footwear have stated that 7-Eleven "inspire[d]" the design (Rizzo, Andrew, "7-Eleven Inspires This Upcoming Nike Air Max 95," Sneaker News, June 10, 2026), and that the design is "[s]pecifically tied to the convenience store" (Servantes, Ian, "Nike's Big Bubble Air Max 95 Is Becoming an Unexpected Homage to 7-Eleven," *Women's Wear Daily*,  June 10, 2026). Examples of captions from such articles are shown below.





Copies of these and other third-party media sources drawing an association between the Infringing Footwear and 7-Eleven are attached collectively at **Exhibit 12**.

40.    Nike's advertising, marketing, promotion, offering for sale, and imminent sales of the Infringing Footwear, and its purposeful association with 7-Eleven's Tri-Color Mark and brand, are likely to dilute 7-Eleven's 7-ELEVEN Marks and Tri-Color Mark by blurring the distinctiveness of 7-Eleven's famous 7-ELEVEN Marks and Tri-Color Mark. 7-Eleven likely will lose control of its reputation and the distinctive associations it has cultivated with its 7-ELEVEN Marks and Tri-Color Mark due to Nike's conduct.

41.    On information and belief, Nike knowingly, willfully, intentionally, and maliciously has adopted and used a confusingly similar imitation of the Tri-Color Mark and the

7-ELEVEN Marks on the Infringing Footwear. Nike deliberately intends to deceive consumers into believing that the Infringing Footwear is connected, associated, or affiliated with 7-Eleven to trade on 7-Eleven's valuable goodwill.

42. Nike has shown a callous and malicious disregard for 7-Eleven's rights. Nike has thus acted in bad faith, with malicious intent, and in knowing disregard of 7-Eleven's rights.

43. The likelihood of confusion, mistake, and deception engendered by Nike's misappropriation of 7-Eleven's famous Tri-Color Mark and 7-ELEVEN Marks, or its offering of goods bearing confusingly similar imitations of the Tri-Color Mark and the 7-ELEVEN Marks, is irreparably harming the goodwill symbolized by the Tri-Color Mark and the 7-ELEVEN Marks and the reputation that they embody.

44. Unless these acts of unfair competition and infringement by Nike are restrained by this Court, they will continue to cause irreparable injury to 7-Eleven and to the public, for which there is no adequate remedy at law.

45. 7-Eleven has repeatedly contacted Nike to attempt to resolve this dispute with Nike prior to filing this lawsuit. Dispute multiple communications between the parties, Nike has indicated it will continue its advertising and marketing of the Infringing Footwear (including on its website and on its SNKRS app) and its plan to launch the Infringing Footwear on 7/11.

**COUNT ONE**
**Federal Unfair Competition in Violation of Lanham Act § 43(a)**
**(15 U.S.C. § 1125(a))**

46. 7-Eleven repeats and incorporates by reference the allegations in the preceding paragraphs.

47. Nike's use of a confusingly similar imitation of 7-Eleven's Tri-Color Mark and the 7-ELEVEN Marks has caused and is likely to cause confusion, deception, and mistake by creating

16

the false and misleading impression that Nike's goods are manufactured or distributed by 7-Eleven, or are affiliated, connected, or associated with 7-Eleven, or have the sponsorship, endorsement, or approval of 7-Eleven.

48.     Nike has made false designations of the origin of its goods in violation of 15 U.S.C. § 1125(a). Nike's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, irreparable injury to 7-Eleven's goodwill and reputation as symbolized by 7-Eleven's Tri-Color Mark and 7-ELEVEN Marks, for which 7-Eleven has no adequate remedy at law.

49.     Nike's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with 7-Eleven's Tri-Color Mark and 7-ELEVEN Marks—specifically the marks shown in Registration Nos. 3,644,842, 3,679,337, 4,917,149, 2,135,385, and 2,295,753— to 7-Eleven's great and irreparable harm.

50.     Nike has caused and, unless enjoined by this Court, is likely to continue causing substantial injury to the public and to 7-Eleven; therefore, 7-Eleven is entitled to injunctive relief and to recover Nike's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**COUNT TWO**
**Federal Trademark Infringement**
**in Violation of Lanham Act § 32(1)**
**(15 U.S.C. § 1114(1))**

51.     7-Eleven repeats and incorporates by reference the allegations in the preceding paragraphs.

52.     Nike's use of a confusingly similar imitation of 7-Eleven's registered rights reflected in U.S. Trademark Registration Nos. 3,644,842, 3,679,337, 4,917,149, 2,135,385, and 2,295,753 has caused and is likely to cause confusion, deception, and mistake by creating the false

and misleading impression that Nike's goods are manufactured or distributed by 7-Eleven, or are affiliated, connected, or associated with 7-Eleven, or have the sponsorship, endorsement, or approval of 7-Eleven.

53.    7-Eleven and Nike advertise, market, and sell their respective products through the same or overlapping channels; and Nike's use of confusingly similar imitations of 7-Eleven's registered marks shown in Registration Nos. 3,644,842, 3,679,337, 4,917,149, 2,135,385, and 2,295,753, as described in this Complaint, is likely to cause confusion, deception, and mistake among consumers before, at the point of, and after the purchase of Nike's products, resulting in initial-interest, point-of-sale, and post-sale confusion.

54.    Nike has used a mark confusingly similar to the marks shown in 7-Eleven's U.S. Trademark Registration Nos. 3,644,842, 3,679,337, 4,917,149, 2,135,385, and 2,295,753 in violation of 15 U.S.C. §§ 1114 and 1125(a). Nike's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, irreparable injury to 7-Eleven's goodwill and reputation as symbolized by 7-Eleven's marks in Registration Nos. 3,644,842, 3,679,337, 4,917,149, 2,135,385, and 2,295,753, for which 7-Eleven has no adequate remedy at law.

55.    Nike's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with 7-Eleven's marks, to 7-Eleven's great and irreparable harm.

56.    Nike has caused and, unless enjoined by this Court, will continue causing substantial injury to the public and 7-Eleven; therefore, 7-Eleven is entitled to injunctive relief and to recover Nike's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT THREE
### Federal Dilution in Violation of Lanham Act § 43(c)
### (15 U.S.C. § 1125(c))

57.     7-Eleven repeats and incorporates by reference the allegations in the preceding paragraphs.

58.     For decades, 7-Eleven has exclusively and continuously promoted and used its Tri-Color Mark in connection with its 7-ELEVEN name and marks in the United States. The 7-ELEVEN Marks and Tri-Color Mark became famous and widely recognized symbols of 7-Eleven and its products among the general consuming public in the United States as designations of the source of the goods bearing them well before Nike began promoting, distributing, or offering for sale the Infringing Footwear.

59.     Nike is using in commerce of a confusingly similar imitation of 7-Eleven's Tri-Color Mark and 7-ELEVEN Marks that dilutes and is likely to dilute the distinctiveness of 7-Eleven's Tri-Color Mark and 7-ELEVEN Marks by eroding the public's exclusive identification of these famous marks with 7-Eleven, blurring or whittling away the distinctiveness of these famous marks, and otherwise lessening the capacity of the Tri-Color Mark and 7-ELEVEN Marks to identify and distinguish 7-Eleven's goods.

60.     Nike's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with 7-Eleven's Tri-Color Mark and 7-ELEVEN Marks or to cause dilution of the Tri-Color Mark and 7-ELEVEN Marks to the great and irreparable injury of 7-Eleven.

61.     Nike has caused and, unless enjoined by this Court, will continue to cause irreparable injury to 7-Eleven's goodwill and business reputation and dilution of the distinctiveness and value of 7-Eleven's famous Tri-Color Mark and 7-ELEVEN Marks, in violation

19

of 15 U.S.C. § 1125(c). 7-Eleven is therefore entitled to injunctive relief and to recover Nike's profits, actual damages, enhanced or trebled profits and damages, in addition to costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## COUNT FOUR
### Trademark Infringement and Unfair Competition
### In Violation of Texas Common Law

62.    7-Eleven repeats and incorporates by reference the allegations in the preceding paragraphs.

63.    Nike is using a confusingly similar imitation of the Tri-Color Mark and the 7-ELEVEN Marks in commerce in connection with the sale, offering for sale, distribution, importation, exportation, and/or advertising of the Infringing Footwear, without authorization from 7-Eleven.

64.    Nike's conduct has caused and likely will cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of the Infringing Footwear, in that consumers will likely believe that 7-Eleven has authorized Nike's sale, offering for sale, distribution, importation, exportation, and/or advertising of the Infringing Footwear in Texas or that Nike is associated with or related to 7-Eleven.

65.    Nike's actions are likely to injure and, on information and belief, have injured 7-Eleven's image and reputation with consumers in Texas by creating confusion about the source of the Infringing Footwear and by causing a diminution in value of the goodwill associated with the Tri-Color Mark and the 7-ELEVEN Marks.

66.    On information and belief, Nike's sale, offering for sale, distribution, importation, exportation, and/or advertising of the Infringing Footwear have been committed deliberately and willfully, with knowledge of 7-Eleven's exclusive rights and goodwill in the 7-ELEVEN Marks

and Tri-Color Mark and with a bad faith intent to cause confusion and trade on 7-Eleven's goodwill.

67.    Nike's unlawful activities constitute willful trademark infringement and unfair competition in violation of Texas common law.

68.    As a direct and proximate result of Nike's violations of Texas common law, 7-Eleven has been, and will continue to be, damaged in an amount to be determined at trial.

69.    Nike has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception to members of the public and, additionally, irreparable injury to 7-Eleven's goodwill and reputation as symbolized by the 7-ELEVEN Marks and Tri-Color Mark, for which 7-Eleven has no adequate remedy at law. Accordingly, 7-Eleven is entitled to injunctive relief, and to recover Nike's profits, actual damages, exemplary damages, costs, reasonable attorneys' fees, and any other remedies provided under Texas law.

**COUNT FIVE**
**Trademark Infringement**
**(Tex. Bus. & Com. Code § 16.102(b))**

70.    7-Eleven repeats and incorporates by reference the allegations in the preceding paragraphs.

71.    Nike is using a confusingly similar imitation of 7-Eleven's 7-ELEVEN Marks reflected in U.S. Trademark Registration Nos. 3,644,842, 3,679,337, 4,917,149, 2,135,385, and 2,295,753 in commerce in connection with the sale, offering for sale, distribution, importation, exportation, and/or advertising of the Infringing Footwear, without authorization from 7-Eleven.

72.    Nike's conduct has caused and likely will cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of the Infringing Footwear, in that consumers likely will believe that 7-Eleven has authorized Nike's sale, offering for sale, distribution,

21

importation, exportation, and/or advertising of the Infringing Footwear in Texas or that Nike is associated with or related to 7-Eleven.

73.     Nike's actions likely will injure and, on information and belief, have injured 7-Eleven's image and reputation with consumers in Texas by creating confusion about the source of the Infringing Footwear and by causing a diminution in value of the goodwill associated with the 7-ELEVEN Marks shown in Registration Nos. 3,644,842, 3,679,337, 4,917,149, 2,135,385, and 2,295,753.

74.     On information and belief, Nike's sale, offering for sale, distribution, importation, exportation, and/or advertising of the Infringing Footwear have been committed deliberately and willfully, with knowledge of 7-Eleven's exclusive rights and goodwill in the 7-ELEVEN Marks and with a bad faith intent to cause confusion and trade on 7-Eleven's goodwill.

75.     Nike's unlawful activities constitute willful trademark infringement in violation of Section 16.102 of the Texas Business and Commerce Code.

76.     As a direct and proximate result of Nike's violations of Texas state law, 7-Eleven has been, and will continue to be, damaged in an amount to be determined at trial.

77.     Nike has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception to members of the public and, additionally, irreparable injury to 7-Eleven's goodwill and reputation as symbolized by the 7-ELEVEN Marks shown in 7-Eleven's Registration Nos. 3,644,842, 3,679,337, 4,917,149, 2,135,385, and 2,295,753, for which 7-Eleven has no adequate remedy at law. Accordingly, 7-Eleven is entitled to injunctive relief, and to recover Nike's profits, actual damages, exemplary damages, costs, reasonable attorneys' fees, and any other remedies provided under Texas law.

## COUNT SIX
### Unfair Competition by Misappropriation
### In Violation of Texas Common Law

78.     7-Eleven repeats and incorporates by reference the allegations in the preceding paragraphs.

79.     7-Eleven expended significant resources in creating the Tri-Color Mark and the 7-ELEVEN Marks, including by investing millions of dollars in promotion of the marks and Tri-Color Mark. In using a confusingly similar imitation of the Tri-Color Mark and 7-ELEVEN Marks in competition with 7-Eleven, Nike is taking advantage of the extensive time, labor, skill, and money 7-Eleven invested in creating the goodwill associated with the Tri-Color Mark and 7-ELEVEN Marks, with Nike bearing little or no expense itself.

80.     Nike's actions have caused and, unless enjoined by this Court, will continue to cause commercial damage to 7-Eleven and constitute unfair competition by misappropriation in violation of Texas common law.

81.     As a direct and proximate result of Nike's actions, 7-Eleven has suffered and will continue to suffer damages, including damage to its goodwill and reputation.

82.     Nike has caused and, unless enjoined by this Court, will continue to cause irreparable injury to 7-Eleven, for which 7-Eleven has no adequate remedy at law. Accordingly, 7-Eleven is entitled to injunctive relief, and to recover Nike's profits, actual damages, exemplary damages, costs, reasonable attorneys' fees, and any other remedies provided under Texas law.

## COUNT SEVEN
### Dilution
### (Tex. Bus. & Com. Code § 16.103)

83.     7-Eleven repeats and incorporates by reference the allegations in the preceding paragraphs.

23

84. The Tri-Color Mark and 7-ELEVEN Marks are famous and distinctive and are widely recognized by the public throughout Texas as a designation of the source of 7-Eleven's goods and services.

85. For decades, 7-Eleven has exclusively and continuously promoted and used its Tri-Color Mark in connection with its 7-ELEVEN name and marks in the United States, including in the State of Texas.

86. Nike's actions as described herein began after the Tri-Color Mark and 7-ELEVEN Marks became famous in Texas.

87. Nike is making use in commerce of a confusingly similar imitation of 7-Eleven's Tri-Color Mark and 7-ELEVEN Marks, such that there is an association between the Infringing Footwear and the Tri-Color Mark and 7-ELEVEN Marks in the minds of consumers in Texas.

88. This association will likely impair the distinctiveness of the Tri-Color Mark and the 7-ELEVEN Marks by eroding the public's exclusive identification of these famous marks with 7-Eleven, tarnishing and degrading the positive associations and prestigious connotations of these famous marks, and otherwise lessening the capacity of the Tri-Color Mark and 7-ELEVEN Marks to identify and distinguish 7-Eleven's goods.

89. Nike's conduct likely dilutes and has diluted the famous 7-ELEVEN Marks and Tri-Color Mark in violation of Section 16.103 of the Texas Business and Commerce Code.

90. On information and belief, Nike's conduct has been committed deliberately and willfully, with knowledge of 7-Eleven's exclusive rights and goodwill in the famous 7-ELEVEN Marks and Tri-Color Mark and with a bad faith intent to cause dilution and trade on 7-Eleven's goodwill.

91.    As a direct and proximate result of Nike's actions, 7-Eleven has suffered and will continue to suffer damages, including damage to its goodwill and reputation.

92.    Nike has caused and, unless enjoined by this Court, will continue to cause irreparable injury to 7-Eleven's goodwill and business reputation and dilution of the distinctiveness and value of 7-Eleven's famous Tri-Color Mark and 7-ELEVEN Marks, for which 7-Eleven has no adequate remedy at law. Accordingly, 7-Eleven is entitled to injunctive relief, and to recover Nike's profits, actual damages, exemplary damages, costs, reasonable attorneys' fees, and any other remedies provided under Texas law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff 7-Eleven respectfully requests that:

1.    Nike and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by through or under authority from Nike, or in concert or participation with Nike, and each of them, be preliminarily and permanently enjoined from:

    a.    advertising, promoting, offering for sale, or selling the Infringing Footwear or other goods bearing confusingly similar imitations of 7-Eleven's Tri-Color Mark or 7-ELEVEN Marks;

    b.    using the Tri-Color Mark or 7-ELEVEN Marks or any other copy, reproduction, colorable imitation, or simulation of 7-Eleven's 7-ELEVEN Marks or Tri-Color Mark on or in connection with Nike's goods; and

    c.    passing off, palming off, or assisting in passing off or palming off Nike's goods as those of 7-Eleven, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2. Nike be ordered to cease offering for sale, marketing, promoting, and selling and to recall all products sold under or bearing any confusingly similar imitations of 7-Eleven's Tri-Color Mark or 7-ELEVEN Marks that are in Nike's possession, custody, or control, or have been shipped by Nike or under its authority, to any customer, including but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Nike;

3. Nike be ordered to deliver up for impoundment and for destruction, all footwear, signs, advertising, sample books, promotional materials, or other materials in the possession, custody, or control of Nike found to adopt, infringe, or dilute 7-Eleven's intellectual property or that otherwise unfairly compete with 7-Eleven and its products;

4. Nike be compelled to account to 7-Eleven for any and all profits derived by Nike from the sale or distribution of the Infringing Footwear;

5. 7-Eleven be awarded all damages caused by the acts forming the basis of this Complaint;

6. Based on Nike's knowing and intentional use of a confusingly similar imitation of 7-Eleven's 7-ELEVEN Marks and Tri-Color Mark, the damages awarded be trebled and the award of Nike's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7. Nike be required to pay 7-Eleven the costs of this action and 7-Eleven's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and the state statutes and common law cited in this Complaint;

8. Based on Nike's willful and deliberate infringement and dilution, and to deter such conduct in the future, 7-Eleven receive exemplary damages;

26

9.      7-Eleven be awarded prejudgment and post-judgment interest on all monetary awards; and

10.     7-Eleven have such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, 7-Eleven demands a trial by jury on all issues triable by right to a jury.

Dated:  July 1, 2026                            Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON LLP**

By: /s/ *Cole B. Ramey*
Cole B. Ramey
State Bar No. 1649480
cramey@ktslaw.com
Zoe P. Stendara
State Bar No. 24122986
zstendara@ktslaw.com
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Tel:    (214) 922-7126
Fax:    (214) 292-9419

27